IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JULIAN BRETT WATSON, #279414, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:09-CV-268-TMH |
| ) | [WO] |
| ) | |
| CAPT. NIXON, et al., ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Julian Brett Watson ["Watson"], an indigent inmate, challenging actions which occurred during his confinement in the Autauga County Metro Jail.[1] Watson names Larry Nixon, the Chief Jailer, Dennis Liles, the Assistant Jail Administrator, and Frankie Knight, an officer at the jail during the relevant time period, as defendants in this cause of action. The claim presented in the complaint remaining before this court alleges the defendants acted with deliberate indifference to Watson's health.[2] Specifically, Watson complains defendant Nixon refused to allow him to wear contact lenses during his incarceration in the Autauga County Metro Jail. Watson further maintains defendants Liles and Knight denied him

---

[1] Watson is now incarcerated at the Easterling Correctional Facility.

[2] The court previously dismissed those claims challenging the confiscation and/or loss of various items of personal property, including a pair of contact lenses, as such claims entitle Watson to no relief from this court. *Order of April 22, 2009 - Doc. No. 9*.

access to medical treatment for a cheek injury suffered on May 11, 2008 during an altercation with another inmate. In motions filed subsequent to initiating the complaint, Watson also challenged the access provided by jail officials to legal materials.[3] Watson seeks declaratory relief, referral to a free-world physician at the defendant's expense and monetary damages for the alleged violations of his constitutional rights.

The defendants filed an answer, special reports and supporting evidentiary materials addressing Watson's claims. Pursuant to the orders entered herein, the court deems it appropriate to treat these reports as a motion for summary judgment. *Order of May 7, 2009 - Court Doc. No. 22*. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's responses in opposition to the reports/motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule

---

[3] Based on the actions of the parties, the court construes the assertions contained in these motions to raise an access to courts claim.

56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[4] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the

---

[4] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Watson is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claim(s) for relief.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based

4

on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami,*

*Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Watson fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III.  DISCUSSION[5]

**A.  Suit Against Defendants in Their Official Capacities - Absolute Immunity**

To the extent Watson sues the defendants in their official capacities, they are immune from monetary damages.[6] Official capacity lawsuits are "in all respects other than

---

[5]The evidentiary materials indicate the alleged constitutional violations made the basis of the instant complaint occurred during Watson's incarceration as a pre-trial detainee. Regardless of Watson's status in the jail either as a pre-trial detainee or convicted inmate, the applicable standard of review remains the same. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.... However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492 (1986) (For analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

[6]Under all facets of Alabama law, a county sheriff, his jailers and medical staff act as state officers "when supervising inmates and otherwise operating the county jails." *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff and, by extension, his staff as members of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is executive officer of the State).

name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994). Thus, the defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities. *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B. Deliberate Indifference

Watson complains defendant Nixon refused to allow him to wear contacts during his confinement at the Autauga County Metro Jail. Watson further alleges defendants Liles and Knight placed him in isolation on May 11, 2008 due to his involvement in an

altercation with another inmate and denied him access to medical treatment for an injury to his left cheek he contends occurred in this altercation.[7] Watson maintains he suffered from this injury during the entirety of his confinement in the Autauga County Jail.

The defendants adamantly deny they acted with either callous disregard or deliberate indifference to Watson's health. Specifically, the defendants maintain they provided Watson unconditional access to medical treatment during his confinement in the Autauga County Metro Jail and at no time denied him access to treatment for any medical need arising during such confinement. Defendant Nixon asserts that on the one occasion when Watson questioned him regarding the loss of his contact lenses he informed Watson that jail policy prohibited inmates from using contact lenses while confined in the jail and advised Watson he should have a family member send him a pair of glasses. *Defendants' Exhibit A (Affidavit of Larry Nixon) - Doc. No. 13-1* at 5. Watson also had access to medical personnel with respect to this matter. Defendants Liles and Knight assert they had no knowledge of any injury suffered by Watson on May 11, 2008 as neither of them was working in the jail on this date. *Defendants' Exhibit A-1 (Affidavit of Dennis Liles) - Doc. No. 99-1* at 1-2; *Defendants' Exhibit A-1 (Affidavit of Frankie Knight) - Doc. No. 102-1* at 1-2; *Defendants' Exhibit A-2 (Jail Times Computation Cards) - Doc. No. 99-2*. The

---

[7]The plaintiff characterizes the injury as a "fractured cheekbone" but presents no evidence which suggests he suffered a fracture or any other injury to his cheek in May of 2008; instead, the medical records show that from the date of the alleged injury and at all times subsequent thereto Watson sought medical treatment on numerous occasions for various ailments and injuries but never requested treatment for his left cheekbone. In addition, medical personnel provided several evaluations and examinations during which Watson did not mention any injury to his left cheekbone or seek treatment for such an injury.

defendants further assert they did not observe an injury to Watson's cheekbone during his confinement and maintain they never denied him access to treatment for any injury or complaint during his confinement in the Autauga County Metro Jail. The medical records demonstrate that Watson, despite his ability to freely correspond with medical personnel as evidenced by voluminous sick call requests for treatment regarding other physical ailments and injuries, did not seek medical treatment for this injury at any time during his incarceration in the jail.

  The court has undertaken a thorough and exhaustive review of Watson's medical records. These records establish that after the purported injury to his cheekbone Watson routinely filed sick call requests seeking treatment for a variety of ailments/issues, including but not limited to, an abscess under his left arm, mental health problems, weight loss, inflamed gums, dry scalp, lower back pain, headaches, a right wrist injury, lack of contact lenses, cold symptoms and a sore inside his mouth (upper left side). *Defendants' Exhibit B (Parts 1 thru 6)*. In addition, Watson filed requests regarding the charges assessed for medical treatment, the need for additional food portions/snacks, a delay in annual physical evaluations, the medications prescribed to him and access to his medical records. *Id*. Watson, however, did not at any time file a request seeking treatment for an injury to his cheekbone. In August of 2008, Watson submitted two sick call requests citing problems with his eyes due to the lack of contact lenses. *Defendants' Exhibit B (Part 5) - Doc. No. 99-7* at 7-8. He sought replacement of his contact lenses. *Id*. at 7. In response

to these requests, the attending nurse advised Watson he could only have eyeglasses in the facility. *Id*. During a medical consultation with Watson on May 19, 2009 prompted by requests from Watson for a copy of his medical records, Watson referenced "his concerns about an incident that happened a long time ago." *Id*. at 4. Watson did not seek treatment with respect to the purported incident. *Id*. The consulting nurse advised Watson that "he never requested to see medical" regarding this incident, a fact Watson did not dispute. *Id*. Watson also again "asked about contact lenses" and the nurse advised him jail policy did "not allow [contact lenses] in the facility." *Id*.

Although Watson sought treatment for injuries suffered in other altercations with inmates, he failed to seek treatment for the alleged injury to his cheekbone in early May of 2008. Specifically, on December 16, 2008, Watson reported to the health care unit for evaluation of injuries he received after an "assault[] by two other inmates." *Defendants' Exhibit B (Part 3) - Doc. No. 99-5* at 3. The attending nurse observed scratches to Watson's face and his left upper arm. *Id*. Watson did not mention the injury to his left cheekbone at this time nor did the nurse during her examination of Watson's injuries, including scratches to the left side of his face, detect any injury to his cheekbone. *Id*. On April 3, 2011, Watson ambulated to the healthcare unit for treatment of injuries received in a fight with other inmates. The attending nurse thoroughly examined Watson and made the following observations: "Numerous areas of bluish red discolorations to neck, [left] side of face & forehead. [Left] eyelid dark blue discoloration [with increased amount of]

11

edema noted. Denies [headaches], visual disturbance, or [increased] pain. Approx 1" curved laceration under [left] eye. No bleeding. Small scratch to top of head. Denies injuries below neck. Moving jaw [with some] difficulty...." *Id*. at 2. The nurse cleaned each of Watson's injuries, applied a bandage to his left eye/cheek and provided Tylenol for pain. *Id*. Watson did not reference the prior alleged fracture to his left cheekbone and the nurse did not observe such injury during her examination of the injuries sustained by Watson on the left side of his face. *Id*. The court further finds it worthy of mention that on August 21, 2009, Watson submitted a sick call request seeking, in relevant part, treatment for "a sore on the inside of my left cheek near [the] top of my jaw toward the back of my mouth...." *Defendants' Exhibit B (Part 5) - Doc. No. 99-7* at 1. Watson again makes no mention of an injury to his left cheekbone.

A correctional official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health when the official knows the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994). A plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation. With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' ... ***[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment***." *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is ***obduracy and wantonness, not inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986)

13

(emphasis added).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must be a strong likelihood, rather than a mere possibility before a [correctional official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted). As the foregoing makes clear, mere negligence "does not justify liability under section 1983...." *Id*.

Pursuant to the aforementioned criteria, Watson is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation[]" in order to survive summary judgment on his deliberate indifference claim. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To circumvent entry of summary judgment on a properly supported motion, plaintiff must produce sufficient evidence which demonstrates (1) an objectively substantial risk of serious harm; (2) a subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries);

*Marsh*, 268 F.3d at 1028-1029 (same).

Watson fails to present evidence sufficient to create a genuine issue of disputed fact with respect to his claim that the defendants acted with deliberate indifference as the record is devoid of evidence that the defendants had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Watson. Specifically, Watson fails to present any evidence, significantly probative or otherwise, demonstrating the defendants knew he suffered an injury to his left cheekbone which created a serious risk of harm and that with this knowledge thereafter ignored the risk. Moreover, the undisputed medical records establish Watson had unlimited access to medical treatment for any injury or malady endured while in the jail. Watson has therefore failed to establish each of the requisite elements of his deliberate indifference claim. *Carter*, 352 F.3d at 1350. Consequently, the defendants are entitled to summary judgment on this claim.

### C.  Access to Courts

In several documents filed in this case, Watson asserts the defendants denied him access to legal materials, i.e., the Federal Rules of Civil Procedure and the Alabama Criminal Code. The law directs that incarcerated persons are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance recognized in

*Bounds*. Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury" arising from the alleged inadequacies in the law library, legal assistance program or access provided by officials. *Lewis*, 518 U.S. at 349. In identifying the particular right protected by *Bounds*, the Court explained that "*Bounds* established no ... right [to a law library or to legal assistance]. The right that *Bounds* acknowledged was the (already well-established) right of **access to the courts**.... [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id*. at 350-351 (emphasis in original) (citations omitted). The Court further opined *Bounds* did not require "that the State ... enable the prisoner to **discover grievances**, and to **litigate effectively** once in court.... To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] ... the Constitution requires." *Id*. at 354 (emphasis in original).

    The Court similarly rejected the argument that the mere claim of a systemic defect, without a showing of actual injury, presented a claim sufficient to confer standing. *Id*. at 349. Moreover, *Lewis* emphasized that a *Bounds* violation is related to the lack of an inmate's capability to present claims. 518 U.S. at 356. "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement

before the courts. When any inmate ... shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury. *Lewis*, 518 U.S. at 356. Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement.... ***[I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone***." *Id*. at 356-357 (emphasis added). "[T]he Constitution does not require that prisoners ... be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360. The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts. *Id*. at 356. A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not ... thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.' [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500." *Id*. at 363.

The record in this case establishes jail personnel provided Watson access to legal materials and his court-appointed criminal attorney during his confinement at the Autauga

County Metro Jail and in no way inhibited his preparation, filing or processing of any legal causes of action. In addition, throughout the proceedings in this case, Watson presented all requisite arguments and pleadings to this court. Nothing in the record demonstrates the actions about which Watson complains improperly impeded or adversely affected his efforts to pursue nonfrivolous legal claims. Watson has utterly and completely failed to come forward with any evidence that the actions about which he complains deprived him of the *capability* of pursing claims in this or any other court. Consequently, Watson does not establish he suffered the requisite injury, *Lewis*, 518 U.S. at 356, and the defendants are therefore entitled to summary judgment on his access to courts claim. *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006) (access to courts claim fails because plaintiff did not show any actual injury); *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991) (inmate entitled to no relief on access to courts claim in "the absence of any indications of ultimate prejudice or disadvantage....").[8]

### IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

---

[8] Watson concedes the access to courts claim entitles him to no relief as he requests that this "issue ... be nol prossed." *Plaintiff's May 4, 2012 Response - Doc. No. 104* at 2.

4. No costs be taxed herein.

It is further

ORDERED that on or before July 12, 2012 the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 22nd day of June, 2012.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE